IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KEVIN QUIRKE,** | : Civil No. 1:19-cv-01242 |
| **Plaintiff,** | : |
| v. | : |
| **JLG INDUSTRIES, INC., a corporation** | : Judge Sylvia H. Rambo |
| **Defendant.** | |

## **M E M O R A N D U M**

Before the court is a motion to dismiss the complaint based on *forum non conveniens* filed by Defendant JLG Industries Inc. ("JLG"). (Doc. 16.) For the reasons that follow, the court will deny the motion.

## **I.**    **Background**

On April 25, 2019, Plaintiff Kevin Quirke ("Quirke") initiated this action by filing a complaint in the Western District of Pennsylvania asserting claims for strict products liability, negligence, and breach of warranty. (Doc. 1.) According to the complaint, in March 2018, Quirke was operating a model 860SJ Boom Lift (the "boom lift") while working on the premises of his employer, Sunbelt Rentals of Canada in Toronto, Canada, when the boom suddenly retracted. (*See id.* at ¶¶ 6, 7 10.) The sudden retraction allegedly caused the platform on which Quirke was standing to rapidly descend about forty feet before coming to an abrupt stop, causing Quirke to strike the platform and its railings. (*Id.* at ¶ 11.) As a result, Quirke

1

sustained severe injuries including, among other things, a fractured ankle, a fractured jawbone, a deep laceration in his neck tissue, and nerve and spinal injuries. (*Id.* at ¶ 13.)

Quirke alleges that the retraction in the boom and his injuries resulted from JLG's improper installation and assembly of the boom lift's cable system. According to Quirke, the improper assembly caused a "crisscross routing of the cables resulting in the extended cables rubbing against each other," (Doc. 1, ¶ 10) which caused, in turn, the cables to degrade and deteriorate over the boom lift's relatively short time in service. (*Id.* at ¶¶ 10-12.) JLG avers in its defense that some prior user of the boom lift may have disengaged a "broken cable" indicator light in the boom lift's settings that would have alerted Quirke that the boom lift was not in usable condition. (Doc. 17, p. 13 n.1.)

Quirke is an Irish citizen. (Doc. 1 at ¶ 1.) JLG is a Pennsylvania corporation. (*Id.* at ¶ 2.) The boom lift is alleged to have been manufactured and assembled by JLG in McConnellsburg, Pennsylvania sometime between March 2014 and March 2018 before its sale to Quirke's employer. (*Id.* at ¶¶ 8-9; Doc. 16, ¶ 7.)

On June 19, 2019, JLG filed a motion to dismiss the complaint based on *forum non conveniens* and alternatively to transfer venue to the Middle District of Pennsylvania. (Doc. 8.) On June 17, 2019, the Western District of Pennsylvania partially granted JLG's motion and ordered that the case be transferred to the Middle

District of Pennsylvania. (Doc. 13.) In doing so, the Western District "defer[red] any ruling on the requested dismissal on the basis of forum non-conveniens to the transferee court." (*Id.* at p. 4.) On July 30, 2019, JLG filed its present motion to dismiss based on *forum non conveniens.* (Doc. 16.) The matter has been fully briefed and is ripe for disposition.

## II. Standard of Review

*Forum non conveniens* is a doctrine empowering a court with legal jurisdiction over a dispute to dismiss a case when "the chosen forum would either oppress a defendant out of all proportion to plaintiff's convenience or cause the court administrative and legal problems." *Trotter v. 7R Holdings LLC*, 873 F.3d 435, 439 (3d Cir. 2017) (citations and internal quotation marks omitted). In deciding a motion to dismiss based on *forum non conveniens*, "a district court must first determine whether an adequate alternate forum can entertain the case." *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 160 (3d Cir. 2010) (citation and brackets omitted). This requirement "[o]rdinarily…will be satisfied when the defendant is 'amenable to process' in the other jurisdiction." *Acuna-Atalaya v. Newmont Mining Corp.*, 765 F. App'x 811, 815 (3d Cir. 2019) (quoting *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 254 n.22 (1981)).

Such motions "may be granted even though the law applicable in the alternative forum is less favorable to the plaintiff's chance of recovery." *Piper*

3

*Aircraft Co.*, 454 U.S. at 250 (citations omitted). However, "in the rare circumstance…where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative," such as where "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." *Acuna-Atalaya*, 765 F. App'x at 815 (quoting *Piper Aircraft Co.*, 454 U.S. at 254).

If an adequate alternative forum does exist, "the district court must determine next the appropriate amount of deference to be given the plaintiff's choice of forum" and must then "balance the relevant public and private interest factors." *Eurofins Pharma US Holdings*, 623 F.3d at 160 (internal quotation marks and citations omitted). The private interest factors include access to sources of proof; availability of compulsory process for the attendance of unwilling witnesses; the cost of obtaining attendance of willing witnesses; the possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. *Trotter*, 873 F.3d at 442. The public interest factors include the possibility of turning courts into congested centers; the likelihood that the case will burden a jury composed of people with no relation to the litigation; the probability that the case will touch the affairs of many persons in the community; and the chances that the court will be at home with the law that must govern the case. *Id.*

"In articulating these factors, the Supreme Court repeatedly emphasized the district court's discretion in selecting and reviewing factors." *Id.* The relevant balancing test requires a qualitative analysis. *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 186 (3d Cir. 1991). The burden is on the movant to show that an adequate alternative forum exists and that the private and public interest factors "weigh heavily in favor of dismissal." *Id.* at 180.

### III. Discussion

#### A. JLG has demonstrated that an adequate alternative forum exists.

JLG has met its burden of showing that an adequate alternative forum exists in Canada because it represents that it "will submit to Ontario, Canada jurisdiction." (Doc. 16, ¶ 16.) *See Dahl v. United Techs. Corp.,* 632 F.2d 1027, 1029 (3d Cir. 1980) (upholding district court's dismissal on *forum non conveniens* grounds on condition that defendant consent to jurisdiction in Norway). Given Quirke's status as an Irish citizen, his choice of forum is entitled to some deference, but less than that received by a U.S. citizen. *Piper Aircraft Co.*, 454 U.S. at 256 ("Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference.").

#### B. JLG has not demonstrated that the relevant private and public interest factors weigh heavily in favor of dismissal.

The relevant private interest factors minimally favor JLG. With respect to access to sources of proof and the availability of compulsory process for the

5

attendance of unwilling witnesses, the parties largely agree that evidence and witnesses potentially critical to JLG's defenses exist in Canada. This includes accident records and witnesses, lift maintenance records, and Quirke's initial treating physicians. However, JLG has not shown that these sources of proof would likely be unavailable to it if trial were held in Pennsylvania. In fact, the record indicates just the opposite—Quirke's Canadian employer has voluntarily produced over one thousand documents (Doc. 18, p. 1); the parties have disassembled, photographed, and documented the lift and relevant cable system in the lift in McConnellsburg, Pennsylvania before returning them to Canada (*id*. at p. 2); and JLG has "conducted 8 additional machine inspections in the Greater Toronto Area." (Doc. 17-4, p. 2.)

Moreover, significant evidence is located in Pennsylvania, most notably personnel and records related to the sale of the lift, as well as the assembly and installation of the cable system in the lift—the underlying conduct alleged by Quirke. It is also unclear whether a Canadian trial would provide Quirke with the necessary access to these proofs, particularly given that JLG allegedly sold the lift on an unknown date as early as March 2014. (Doc. 1, ¶ 8; Doc. 16, ¶ 21.) As such, some personnel with relevant knowledge of the pre-sale assembly of the cable system in the lift may now be former JLG employees that are outside its control. *See Lacey,* 932 F.2d at 184. Nonetheless, given the quantity of potentially relevant defense evidence located in Canada, this factor minimally favors JLG.

6

Neither party identifies any specific fact witnesses that are willing to testify, and this is not a case where the competing forums are half-way across the world. Toronto is a short plane ride from Pennsylvania's major airports. This factor is neutral.

The relevant public interest factors favor Quirke. JLG makes no explicit argument regarding the risk of turning courts into congested centers, the risk of burdening a jury composed of people with no relation to the litigation, or the risk that this case will not touch the affairs of many persons in the community. Instead, JLG essentially argues that Canada has a greater interest in this litigation than Pennsylvania. (*See* Doc. 17, pp. 13-14.) The court disagrees. Any interest that Canada has in "the possible failure of Sunbelt Rentals of Canada to adequately train operators and the required inspection and maintenance procedures that were, arguably, not adhered to by Sunbelt Rentals of Canada" (*id.* at p. 17) is overshadowed by Pennsylvania's well-established interest in governing the liability of its manufacturers. *See LeJeune v. Bliss–Salem, Inc.,* 85 F.3d 1069, 1071 (3d Cir. 1996) ("Pennsylvania law recognizes strict products liability to protect its citizens from defective products and to encourage manufacturers to produce safe products."); *Lacey*, 932 F.2d at 188 (noting "Pennsylvania's interest in deterring the manufacture of defective products"); *Sikkelee v. Precision Airmotive, Corp.*, No. 4:07-CV-00886, 2012 WL 12862562, at *4 (M.D. Pa. Mar. 13, 2012) (noting Pennsylvania's interest

7

in "holding responsible its manufacturers" and that the "adoption of strict liability emphasizes this interest"). These factors favor Quirke.[1]

On the issue of choice of law and whether the trial court would be at home with applying its own law, Pennsylvania's choice of law rules apply to this dispute. *See Amica Mut. Ins. Co. v. Fogel,* 656 F.3d 167, 171 (3d Cir. 2011), *as amended* (Dec. 9, 2011). Under Pennsylvania choice of law rules, the court must first determine if there is a conflict between the potentially applicable laws. *See Hammersmith v. TIG Ins. Co.,* 480 F.3d 220, 230 (3d Cir. 2007). If a conflict does exist, the court must next determine whether the conflict is a true or false conflict. A false conflict exists "if only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's laws." *Lacey,* 932 F.2d at 187. "On the other hand, if the 'governmental interests of both jurisdictions would be impaired if their law were not applied,' there is a true conflict." *Hammersmith*, 480 F.3d at 230 (quoting *Lacey,* 932 F.2d at 187). If a true conflict exists, the court "must then proceed with the choice-of-law analysis and apply the law of the state with the most significant contacts or relationships with the particular issue." *Id.* (internal quotation marks and citations omitted).

---

[1] The court also notes the Western District of Pennsylvania's finding in its order transferring the case that this controversy is "local to the Middle District since the challenged product was designed, assembled, manufactured and sold by a McConnellsburg, Pennsylvania company." (Doc. 13., p. 3.)

Here, the parties agree that a conflict does exist between Canada and Pennsylvania substantive law—Canada does not recognize strict products liability and instead analyzes applicable claims under a negligence regime. However, any conflict between the diverging laws is a false conflict. Pennsylvania's interest in holding its manufactures responsible under strict products liability would be harmed if Canada's more relaxed negligence regime is applied. No discernable Canadian interest would be harmed by the application of Pennsylvania's strict liability rules in this case. JLG identifies none. Nor does it put forth any argument that a true conflict exists on these facts. Therefore, a false conflict is presented, and Pennsylvania law will therefore apply to Quirke's claims, and because this court would be more at home applying Pennsylvania strict products liability law than a Canadian court would, this factor favors Quirke.

On the whole, JLG has failed to meet its burden of showing that those private and public interest factors most relevant to its motion weigh heavily in favor of dismissal. To be sure, significant evidence may be located in Canada, and the court recognizes the thorny issues presented by JLG's motion. Nevertheless, the court is not convinced that litigating in this forum would oppress JLG or cause the court administrative and legal problems. Accordingly, its motion to dismiss based on *forum non conveniens* will be denied.

## IV. **Conclusion**

For the reasons explained above, the court will deny with prejudice JLG's motion to dismiss based on *forum non conveniens*. An appropriate order shall follow.

> */s/ Sylvia H. Rambo*
> SYLVIA H. RAMBO
> United States District Judge

Dated: December 19, 2019