IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KEVIN QUIRKE,** | : | **Civil No. 1:19-cv-01242** |
| **Plaintiff,** | : | |
| v. | : | |
| **JLG INDUSTRIES, INC., a corporation** | : | **Judge Sylvia H. Rambo** |
| **Defendant.** | : | |

**M E M O R A N D U M**

Before the court is a motion to dismiss the complaint based on *forum non conveniens* filed by Defendant JLG Industries Inc. ("JLG"). (Doc. 16.) For the reasons set forth below, the court will deny the motion.[1]

## I. Background

In April 2019, Plaintiff Kevin Quirke ("Quirke") initiated this action by filing a complaint in the Western District of Pennsylvania asserting claims for strict products liability, negligence, and breach of warranty. (Doc. 1.) According to the complaint, in March 2018, Quirke was operating a model 860SJ Boom Lift (the

---

[1] This court previously denied JLG's motion in a memorandum and order dated December 19, 2019 (Docs. 23, 24), both of which shall be vacated by the court. While the court will again deny JLG's motion to dismiss, this memorandum clarifies and corrects various issues of law and fact, including by finding below (*see* § (III)(c)(iii)) that a true conflict exists between the relevant laws of Canada and Pennsylvania pursuant to binding precedent by the Third Circuit in *LeJeune v. Bliss-Salem, Inc*., 85 F.3d 1069, 1071 (3d Cir. 1996), which holds that for purposes of choice of law analysis, a jurisdiction has an interest in applying its law to torts that occur non-fortuitously within its borders.

1

"boom lift") that was manufactured by JLG while working on the premises of his employer, Sunbelt Rentals of Canada in Toronto, Canada, when the boom suddenly retracted. (*See id.* at ¶¶ 6, 7-10.) The sudden retraction allegedly caused the platform on which Quirke was standing to rapidly descend about forty feet before coming to an abrupt stop, causing Quirke to strike the platform and its railings. (*Id.* at ¶ 11.) As a result, Quirke sustained severe injuries including, among other things, a fractured ankle and jawbone, a deep laceration in his neck tissue, and nerve and spinal injuries. (*Id.* at ¶ 13.)

Quirke alleges that the retraction in the boom and his injuries resulted from JLG's improper installation and assembly of the boom lift's cable system. According to Quirke, the improper assembly caused a "crisscross routing of the cables resulting in the extended cables rubbing against each other," (Doc. 1, ¶ 10) which caused, in turn, the cables to degrade and deteriorate over the boom lift's relatively short time in service. (*Id.* at ¶¶ 10-12.) JLG argues in its defense that some prior user of the boom lift may have disengaged a "broken cable" indicator light that would have alerted Quirke that the boom lift was not in usable condition. (Doc. 17, p. 13 n.1.)

Quirke is an Irish citizen and JLG is a Pennsylvania corporation. (Doc. 1 at ¶¶ 1-2.) The boom lift is alleged to have been manufactured and assembled by JLG in McConnellsburg, Pennsylvania sometime between March 2014 and March 2018 before its sale to Quirke's employer. (*Id.* at ¶¶ 8-9; Doc. 16, ¶ 7.)

In June 2019, JLG moved before the Western District of Pennsylvania to dismiss the complaint based on *forum non conveniens* and alternatively to transfer venue to this district. (Doc. 8.) The Western District partially granted JLG's motion and ordered that the case be transferred here. (Doc. 13.) In doing so, the Western District "defer[red] any ruling on the requested dismissal on the basis of forum non-conveniens to the transferee court." (*Id.* at p. 4.) On July 30, 2019, JLG filed its present motion to dismiss based on *forum non conveniens*. (Doc. 16.) The matter has been fully briefed and is ripe for disposition.

## II. Standard of Review

"Under the doctrine of *forum non conveniens,* a district court may, in the exercise of its sound discretion, dismiss the case where: (1) an alternative forum has jurisdiction to hear the case; and (2) when trial in the plaintiff's chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to the plaintiff's convenience, or when the chosen forum is inappropriate due to the court's own administrative and legal problem." *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 160 (3d Cir. 2010).

The first requirement "[o]rdinarily. . . .will be satisfied when the defendant is 'amenable to process' in the other jurisdiction." *Acuna-Atalaya v. Newmont Mining Corp.*, 765 F. App'x 811, 815 (3d Cir. 2019) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981)). If the first requirement is satisfied, "the district court

3

must determine next the appropriate amount of deference to be given the plaintiff's choice of forum" and must then "balance the relevant public and private interest factors." *Eurofins Pharma US Holdings*, 623 F.3d at 160 (internal quotation marks and citations omitted).

The private interest factors include access to sources of proof; availability of compulsory process for attendance of unwilling witnesses; the cost of obtaining attendance of willing witnesses; the possibility of view of premises if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Trotter v. 7R Holdings LLC*, 873 F.3d 435, 442 (3d Cir. 2017). The public interest factors include the possibility of turning courts into congested centers; the likelihood that the case will burden a jury composed of people with no relation to the litigation; the probability that the case will touch the affairs of many persons in the community; and the chances that the court will be at home with the law that must govern the case. *Id.*

"In articulating these factors, the Supreme Court repeatedly emphasized the district court's discretion in selecting and reviewing factors." *Id.* The burden is on the movant to show that an adequate alternative forum exists and that the private and public interest factors "weigh heavily in favor of dismissal." *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 180 (3d Cir. 1991).

4

**III. Discussion**

    **a. JLG has shown that an adequate alternative forum exists.**

JLG has sufficiently shown that an adequate alternative forum exists because it represents in its brief that it will submit to Canadian jurisdiction. *See Dahl v. United Techs. Corp.*, 632 F.2d 1027, 1029 (3d Cir. 1980) (upholding district court's *forum non conveniens* dismissal on condition that defendant consent to jurisdiction in Norway).

    **b. Quirke's choice of forum is entitled to deference.**

Given Quirke's status as an Irish national, his lack of connection to this district, and the fact that the proposed alternative forum in Canada would also inconvenience him, his choice of forum is entitled to some deference, but less than that received by a U.S. plaintiff. *See Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628, 633 (3d Cir. 1989). Accordingly, the court will require JLG to demonstrate "a strong preponderance in favor of dismissal." *Lacey*, 932 F.2d at 179. As explained below, it has failed to do so.

    **c. JLG has not shown that the relevant public and private interest factors weigh heavily in favor of dismissal.**

        i. <u>Access to sources of proof and availability of witnesses</u>

The parties mostly agree that sources of proof potentially essential to Quirke's causes of action and JLG's defenses exist in the United States and Canada respectively. Evidence located in the United States and potentially essential to

5

Quirke's claims include personnel and records related to the assembly, installation, and pre-sale inspection of the lift. Evidence located in Canada and potentially essential to JLG's defense that a prior user of the boom lift disengaged a broken cable indicator light includes personnel and records related to the training and maintenance of the lift.

Many categories of critical evidence exist in both countries. The boom itself and its internal components were disassembled and documented by the parties in Pennsylvania after the accident. Thereafter, the boom was repaired by JLG and returned to Canada. Today, the "boom sections and platform" on which Quirke was injured are in Pennsylvania, while the internal rope components that were allegedly defectively installed were returned to Canada. (Doc. 18-11, p. 2.) Accident and investigation records also exist in both countries. Investigations appear to have been undertaken by Sunbelt Canada and Sunbelt U.S. (*see* Doc. 18-5), the American engineering and accident reconstruction firm Vollmer-Gray Engineering Laboratories ("Vollmer-Gray") that Sunbelt hired (*see* Docs. 18-4, 18-5), and Canadian Occupational and Safety officials. (Doc. 18-5.)

On the whole, given the quantity of evidence located in Canada, the "ease of access of proof" factor favors JLG—but only minimally. The court is far from convinced that a trial in this district would present significant evidentiary problems or convenience issues for JLG. Substantial evidence is located in the United States,

6

Sunbelt Canada has produced over one thousand documents in this action (Doc. 18, p. 1), and JLG has conducted eight "additional machine inspections" in Toronto. (Doc. 17-4, p. 2.) In addition, the record indicates that a trial in Canada could pose critical limitations on Quirke's ability to prosecute his case. JLG allegedly sold the lift on an unknown date as early as six years ago (Doc. 1, ¶ 8; Doc. 16, ¶ 21) and therefore, as Quirke points out, some personnel with relevant knowledge of the pre-sale assembly of the cable system in the lift may now be former JLG employees that are outside its control. *See Lacey*, 932 F.2d at 183.

Perhaps more importantly, a Canadian trial would prevent Quirke from being able to compel testimony by Paul Gunthorn, the U.S.-based Vollmer-Gray mechanical engineer who was present and inspected the boom lift during its post-accident disassembly. It is difficult to overstate the centrality of Mr. Guthorn's observations and opinions to Quirke's case in chief, as demonstrated by a comparison of the complaint and Mr. Guthorn's written findings. (*Compare* Doc. 1, ¶ 10 ("The improper assembly of the cables caused a crisscross routing of the cables resulting in the extended cables rubbing against each other and the telescopic cylinders during the subject boom lift's time in service") *with* Doc. 18-4, p. 7 ("This crisscross routing resulted in the extended cables rubbing against themselves at the crossover point as well as against the telescopic cylinder.") *and compare* Doc. 1, ¶ 12 ("Plaintiff believes and avers, based on an inspection after the subject event, that

7

the sudden and unexpected fall and descent of the work platform was caused by the unexpected and unintended degradation and breaking of the cables, all the result of the aforementioned improper assembly.") *with* Doc. 18-4, p. 7 ("The observed wear patterns on the telescopic cylinder and cables indicate that the extend cables were improperly installed….The contact and wear resulted in damage to the extend cables leading to cable failure. Unexpected, sudden retraction of the fly boom was the result of the extend cable failures.").) Therefore, while ease of access to proof minimally favors JLG, the ability to compel the attendance of witnesses strongly favors Quirke.[2]

> ii. <u>The probability that the case will touch the affairs of many persons in the community and the likelihood that the case will burden a jury composed of people with no relation to the litigation</u>

This case touches on the affairs of both Canadians and Pennsylvanians. Canada and its citizens have an interest in ensuring the safety of their workers and imported products, while Pennsylvania and its citizens have an interest in regulating their domestic corporations and ensuring the safety of locally-made products. A trial

---

[2] With respect to the cost of obtaining attendance of willing witnesses, JLG does not identify any of its willing witnesses. Quirke's treating physicians are located in Canada, while two of his medical experts are located in Pittsburgh, Pennsylvania. (Doc. 18-12.) Given the presence of witnesses located in both countries and the relative proximity of the relevant jurisdictions, this factor is neutral. Moreover, the factor concerned with the possibility of view of premises is inapplicable, as neither Quirke's causes of action nor JLG's defenses implicate the premises where the accident occurred.

8

would not onerously burden a Pennsylvania or Canadian community. The public factors of jurisdictional interest and community burden are thus in equipoise.

### iii. The chances that the court will be at home with the law that must govern the case

On the issue of choice of law and whether the trial court would be at home with applying its own law, Pennsylvania's choice of law rules apply to this dispute. *See Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 171 (3d Cir. 2011), *as amended* (Dec. 9, 2011). Under Pennsylvania choice of law rules, the court must first determine if there is a conflict between the potentially-applicable laws. *See Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007). If a conflict does exist, the court must next determine whether the conflict is a true or false conflict. A false conflict exists "if only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's laws." *Lacey*, 932 F.2d at 187. "On the other hand, if the 'governmental interests of both jurisdictions would be impaired if their law were not applied,' there is a true conflict." *Hammersmith*, 480 F.3d at 230 (quoting *Lacey*, 932 F.2d at 187).

If a true conflict exists, the court must apply the law of the jurisdiction "with the most significant contacts or relationships with the particular issue." *Id.* (internal quotation marks and citations omitted). This analysis takes into account those factors outlined in § 145 of the Restatement (Second) of Conflicts: (i) the place where the injury occurred; (ii) the place where the conduct causing the injury occurred; (iii)

9

the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (iv) the place where the relationship between the parties is centered.

Here, the parties agree that a conflict exists between Pennsylvania and Canadian law because Canada does not recognize strict products liability. That conflict is a "true conflict" because Pennsylvania's interest in holding its domestic manufacturers to the standards of strict liability would be harmed if Canada's more relaxed negligence rules were applied, while Canada's interest in proscribing the rules that govern torts that occur non-fortuitously within its boundaries would be harmed if Pennsylvania strict liability law was applied. *See LeJeune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1071 (3d Cir. 1996).

The court must therefore apply the law of the jurisdiction with the most significant contacts. With respect to those factors outlined in the Restatement, the first factor, the place where the injury occurred, favors Canada. The second factor, the place where the conduct causing the injury occurred, favors the United States, the location where the boom was allegedly defectively assembled. The third factor concerned with the parties' place of incorporation, domicile, and residence slightly favors Pennsylvania, since JLG's continuing and permanent ties to the Commonwealth as a Pennsylvania corporation overshadow Quirke's temporary Canadian residency at the time of the accident. The final factor, the place where the parties' relationship is centered, is inapplicable because the parties had no

relationship. While most of these Restatement factors appear to favor the United States, the place of injury sits among the most important factors, making it far from clear which law will in fact apply to this dispute. Given such uncertainty, "the chances that the court will be at home with the law that must govern the case" is neutral.

At bottom, JLG has not met its burden of demonstrating that the relevant private and public interest factors weigh heavily in favor of dismissal. Substantial evidence is located in the United States, and JLG has not shown it is likely to encounter difficulties or serious convenience concerns accessing evidence located in Toronto. The court is simply not convinced that a trial in this forum would oppress JLG or cause administrative problems for the court. Third Circuit caselaw is clear that where, as here, "the relevant private and public factors are in equipoise, or even if they lean only slightly toward dismissal, the motion to dismiss must be denied." *Lacey,* 932 F.2d at 180. JLG's motion will therefore be denied.

## IV. **Conclusion**

For the reasons explained above, the court will deny JLG's motion to dismiss based on *forum non conveniens*. An appropriate order shall follow.

>*/s/ Sylvia H. Rambo*
>SYLVIA H. RAMBO
>United States District Judge

Dated: March 5, 2020